Number 1-9-1-3-3-7, Carlos Melo v. City of Somerville at all. Good morning, Your Honor. Good morning, is it Mr. Rogel? Rogel, yes. I'm Brian Rogel. I represent the appellant in this case, Carlos Melo. As you know, this is a handicap discrimination case. The safety of the goal of both federal and state handicap discrimination statutes is to require an individualized actual assessment of an employee's abilities rather than to make decisions based on presumption, stereotypes, or qualification standards. In this case, there's really no dispute that the City of Somerville refused to make any individualized assessment of Police Officer Melo's actual abilities. It refused to test him to see what he actually could do. It refused to test him to see whether he could perform the activities that it now claims are essential functions and which it claims it asserts that he could not do. It refused to consider any reasonable accommodation. It refused to even meet with him to make an individualized assessment. In this case, a reasonable accommodation would be to let him stay in the position of Station Officer, which he'd already been in for the past 10 years. There's no dispute that the tasks that Somerville now claims or asserts are essential functions are actually not even listed on its job requirements for patrol officers. What's reasonable accommodation supposed to permit? Isn't it supposed to permit the person to do all the elements of the job? You're asking for accommodation which takes away some of the elements of the job, does it not? Reasonable accommodation, as I understand, Your Honor, is to do the – if they can't do all the functions, it comes to the essential functions. Employee only has to be able to do what are the essential functions of the job. So what your argument, I think, here is that it is not an essential part of the job to be able to do a high-speed chase in an automobile, police automobile, for a person who is basically one-eyed. I'm saying that you have to look at it, yes, but you also have to look at it in the context of someone who's been a 19-year police officer and not an applicant who's in a position to be – Well, I would assume that most police officers in their entire career never shoot their gun, but they have to be qualified, probably do very few high-speed chases. There is a general consensus now or consensus that high-speed chases are unnecessary and often too dangerous. So that's true of the run-of-the-mind police officer. He or she may never during their careers have to do a high-speed chase or any of these things, yet it's an essential element of the job. Why is that not an issue when we have to look at what is a reasonable accommodation? Several reasons, Your Honor. First of all, what is or is not an essential function of the job is a question of fact. What is or is not a reasonable accommodation is a question of fact. So you're saying that this should be a jury question in any event? Yes. I mean, in this case, they apply it as a – Is that true, a reasonable accommodation, when an essential function is one that doesn't permit an accommodation? You first have to decide whether or not it is. Well, I understand they're two separate issues, but you've said that there are two separate factual questions. I'm questioning whether the second of those applies if the first question is answered contrary to your view. If pursuit driving is an essential function of the job, what's the reasonable accommodation that a jury could decide was possible to that? There may not be, but first you have to get to that factual question, is it an essential function of the job? Then you have to look at Carlos Mello. Carlos Mello, for example, owns and drives a motorcycle. Carlos Mello has never been involved in an accident of any kind. Carlos Mello has never been involved in a pursuit of any kind. So the question is, is it an essential function of the job? Well, the state standards say it is, and the community standards say it is. I dispute that, Your Honor. It's not even in their job – the list of what's required of a job for a patrol officer does not say pursuit driving. It doesn't even say high-speed driving. That's what's in their job statement. The chief agrees. The chief couldn't recall a pursuit in the last five years. They discourage pursuit driving, as you say, in there. So I dispute that they've established that it's even in their job requirements. As you know, the case law says merely listing it as a job requirement or statement isn't enough. The employer's statement of what's required is a factor to be considered, but it's not sponsored in this case. And there is a difference between an application standard, which is the college in the case, and a retention standard, where a person is in a position – this isn't a small police department where that could go out on the road at any given day. He works in a station. He works in Somerville. It's a large police department. For 10 years, he's been in as a station officer. That's not going to change. There's nothing in the job description of a station officer that says pursuit driving. Is there a job description of a station officer? There is. I thought there was no separate job description of a station officer. The job descriptions were listed and elicited in deposition testimony, and I'm certain that they're true. So it's not a job. It's what he's described as his job, but the position is patrol officer, and there is a job description for that. There is a job description for patrol officer. It does not include pursuit driving. Right. It does not include high-speed driving. It depends if you look at the HRB standards or some other standard. Well, to go to that point, Your Honor, HRB has an enabling statute where the Massachusetts legislature has authorized them to set both application and retention standards, separate parts of it. They've never set retention standards. They've set application standards. So you have a qualification standard, which EEOC says generally should not be applied unless the employer can justify it. Even in the Carlton case, which is what they heavily rely on, the SGC didn't just stop and say, okay, there's an application standard here. They actually looked at the justification for it. HRB was a party to that case. HRB put on evidence in that case. They justified the standards. They showed that they had relied on experts to develop the standards. They showed why it could not be accommodated. And that's what that case turned out. None of that's happened here. I'm not saying that Somerville might not be able to prevail. If you look at the Nathan case, which is an EEOC case, where they say you actually have to test the guy or the Rohrer case, it's not enough to say that, oh, we think he can't do it. Test him. Even their doctor said there should be field testing in the case. But they never did any field testing. For all we know, Malik can perfectly well do pursuit driving, whatever that actually means. But the city of Somerville doesn't. They didn't test him. They didn't consider testing him. They don't test any of its employees. They don't know whether any other employee, any other police officer, patrol officer, who's been on the job 10, 15, 20 years can do any of the things. Let me switch your focus to another subject. In the attorney's brief in this case, two defenses are asserted that you haven't mentioned yet. One is failure to exhaust administrative remedies because of the lateness of the MCAD filing. The other is collateral estoppel or judicial estoppel. It's framed both ways. I was looking forward to your reply brief since you don't mention either of those defenses in your opening brief. But you didn't file a reply brief. I think the answer is simple to both of them. Collateral estoppel, as we know, requires that a party actually litigate the issue. In this case, he never challenged the issue. The town put him in for an involuntary disability application. He didn't intervene in the case. And, therefore, he never actually litigated. So collateral estoppel, judicial estoppel cannot apply to him. In the McLaughlin case, McLaughlin actually intervened in the case, wasn't litigant, and the court held he had fully litigated it. So the essence of collateral estoppel is that he's actually litigated it, and that did not apply here. So in your view, the fact that he had the right to intervene and the right to appeal and chose not to exercise those rights gets him out from under any collateral estoppel effect? It does, Your Honor. As I've always understood, the essence of collateral estoppel is that you've actually litigated the case. And the authority for that is? Your Honor, over the years, I've looked at collateral estoppel in a number of cases. It's always been the first thing is that you actually litigated. You are coming to the case. You actually litigated the case. Maybe some other principle. Judicial estoppel doesn't quite work that way. But go ahead. What about the administrative remedy? Well, the time limit is really, that's a statute of limitations argument, the time limit issue, because it's 300 days. No, it's not. It's a failure to exhaust administrative remedies argument. The ADA and the state law counterpart say that you can't challenge a discriminatory act unless your administrative complaint is brought within 300 days of the act that is challenged. Well, I hesitate to disagree, but he did file an MCAD. You did. And if you go back 300 days from the date of filing, you haven't yet reached the various actions of the municipality of which you're now complaining. You covered the PRAC proceedings, but the PRAC proceedings are proceedings of the state retirement board, not of the city. But he was terminated by the city on April 17, 2017, when PRAC approved his application, approved the city's application. Yes. Okay. That's the date of his termination. That's within 300 days. He may have lost the right to challenge some prior actions of the city. But the termination date is well within the 300 days. So that's the date of the discriminatory act? That is, the date of termination is the date of at least one discriminatory act, the last discriminatory act. How can that be discriminatory if the city terminates him pursuant to the PRAC grant? The city has to, in order for the PRAC order to take effect. But the city has terminated him because of its perception that he's disabled. The board terminated him at that point because of the PRAC grant of his retirement. It is the city instituting the imbalance to your retirement. It is the city. There's no doubt about the actions. This isn't a dispute about why the city acted. There's no doubt it's on its perception of this vision. They've ignored the fact that the guy's been doing the job for all these years, 15 years after his eye injury. And, yes, I say that the act, you know, the final act, there may be other acts that he could have filed for. But the final act is the city has terminated him. The city terminates him. There's no doubt that ultimately, it can be colored anyway, but they terminated him because of its belief that he couldn't do the job. Could you elaborate a bit on the involuntary nature and explain precisely what you mean by that of the disability retirement? All right. So they call it an accidental disability retirement, which essentially means that it's job related. An employee can voluntarily apply for it, or a city can put someone in for an involuntary retirement. Often happens when a municipal employee is out for an extended period of time, the town says, okay, you're not coming back. We want you out. But it is the city's application to the retirement board. It's an involuntary application. In this case, the employee is not a party to it. He could intervene, but he did not intervene in this case. And therefore, he did not litigate this case. To be in adjudication that someone is entitled to involuntary on an involuntary basis, then it's just the city and the PRAC board that have to agree? The PRAC board has to ultimately make the decision the city puts him in for the application. He doesn't have to appear. He doesn't have to challenge it. He doesn't have to agree or disagree. No one would have disagreed, but his face would essentially be out of work at some point in time. He was a paid employee up until the time that the decision came down, and then the city terminated his employment. So the city could say to someone, I don't think you can do our job, and they say, yes, I can, and the city could just start a proceeding anyhow without their permission, and that's what happened here? They can and did. And that is an involuntary retirement application. That's what happened here. There also seems to be underlying here a drug issue, which apparently the city did not press that issue. It used the other issue to involuntarily retire him. Was he not also subject to termination because of the other issue? Exactly. That's not why he was fired, and so therefore it's not the issue in this case, but as I understand it, the issue led to the city sending him for a medical evaluation, which has brought up the eye issue. That's how the eye issue came up. Right, but they did not, basically they entered into an agreement with him with essentially some kind of last chance agreement, as I understand it, and they weren't terminating him for that. He could have kept working as long as he kept himself clean and adhered to whatever the other requirements was. He wasn't terminated for that. He was terminated because of the eye issue, and again, he lost his eyesight in 2002. He had surgery, came back to work, quit by his doctor to come back to work, worked for four years as a patrol officer, not as a station officer, without incident. He's never had any dispute that he's always done his job without incident, accident, or anything else. Thank you. Thank you. Good morning. May it please the Court, my name is Leonard Kessler, I'm here to respond to the City of Somerville and Chief David Fallon. This is a very sad case. This city values its employees, it values its service. Mr. Revell just concluded by saying that he lost his eyesight in 2003, in the one eye. Actually, there is nothing in the record to support that because the doctor cleared him with no restrictions. He now wants a reasonable accommodation that doesn't do certain things because he cannot do them because of his vision. He never told the city that. There's no evidence that the city was told in 2003 that he has lost his vision in one eye. All this would have happened much earlier. In fact, the City of Somerville bent over backwards for Officer Mello because he was using marijuana, which they're not allowed to do. He was warned the second time he'd be the last chance. If you use marijuana a third time, you will be terminated. They agreed to that. But he wasn't terminated through the marijuana. I just wanted to show what the city did. He comes in smoking marijuana, they're going to test him. As an accommodation to him, they reached an agreement that they would go to retirement as opposed to terminating him. So this is not that the city decided to terminate him. They reached an agreement. So he agreed that although being terminated from marijuana, that he would go into rehab and do a fitness for duty. That's what triggered it. At a fitness for duty, they go over your essential functions. They go over as to what you can do. And the fitness for duty demonstrated that he wasn't fit for duty. Because on the essential functions, the police officer's high-speed pursuit, there's lots of other things. Pause on that, though. To be precise, and correct me if I'm wrong, as I understand it, three doctors opined on whether his monocular vision prevented him from doing the job. Yes. And one of those doctors said it did not. But also said that his marijuana use prevented it. But the issue is, here he wasn't fired for his marijuana use. He was terminated because he couldn't do the job because of his monocular vision. And there's a doctor who is opined that he can. There are two doctors who opined that he cannot. Isn't that what we have juries for? To listen to those doctors and decide which they believe? That's how it usually works, isn't it? No, sir. Why not? This was not a trial. I'm not saying it was a trial. I'm saying the evidence in the case... I hear you. He has evidence from a doctor whose credentials, I understand, are not being challenged under the summary judgment standard, who says, notwithstanding his monocular vision, he can do these pursuits. Perak decided he could not do the... Perak, 2-1. Separate issue. We'll get to that. But let's put Perak to one side. Isn't that a classic, how you get to a jury, on the issue of whether, even if hot pursuit, high-speed pursuit, is an essential characteristic of the job, he can do it? He's got a doctor who says that. And if we were in a different context, that this was not a trial, I certainly agree with you. But this is what we do at summary judgment. We say, let's imagine what a trial would look like if the plaintiff has this evidence and the defendant has this evidence, and if there's a factual issue, and usually if the doctor is saying, and he's not being challenged on Daubert, and he's saying he can do something, you could have 16 doctors who say he can't. That's for the jury. Not in this situation. And why not? I disagree with you, because the Perak determination was... Okay, now you're on to... Now what you're on to, you keep wanting to go to Perak, so let's go to Perak. That is a collateral or judicial estoppel issue. That's not a sufficiency of the evidence issue. HRD, there has been a determination. I suggest to you that the HRD standards for what are essential functions for police officers, as Officer Mello was... Okay, now you've moved to another issue. Go ahead, Judge Kelly. Yeah, again, you're blending two different issues. All right? You've raised a judicial estoppel or collateral estoppel defense. That's an issue. All right? I've got... My principal question regarding that issue is whether you ever raised it in the district court, because I find no evidence that you did. I don't think so. Okay. So therefore, under our precedent, you can't raise it in this appeal. True? Okay. All right? So now you've got the second issue, which is the HRB definition of the essential function of the job. Truly, HRB says essential function includes pursuit driving, but I understand that there is in the record in this case a municipal job description from the city of Somerville that does not include pursuit driving as an essential job function. So why doesn't that also create a genuine issue of material fact? Because HRB controls. The HRB functions, you cannot... They control it, not just the functions, but also the vision requirements. They control on retention? Yes, sir. Where does it say that? You cannot... Okay, it doesn't say that, but you cannot say... Well, you could have... Most employers can have very different requirements for applying and deciding which applicants they'll hire or consider as opposed to the requirements they use for who, after 20 years of service, they would retain or not retain. We can't presume those are the same. And if you're pointing to a state requirement that doesn't say it has anything to do with retention, why is a jury required to say that that is automatically essential in Somerville for retention? I suggest the requirement of having the vision as a police officer. They have to... It's not just HRB pursuit. They have to use deadly force. There's lots of things the police officers have to do that the rest of us don't. But now you're off to another issue. There's no medical testimony saying he can't use deadly force. I understand the reason. So you're trying to... You have a heavy burden here. You're trying to sustain the entry of summary judgment when, on the two central issues, what is the job requirement? Is high-speed pursuit an essential job requirement? You've got conflicting evidence. And then, even if you assume it's essential, you've got a doctor saying he can do it. And so I'm having real difficulty understanding how there's not something here for a jury to parse out. Because I suggest that the PARAC conclusion is what's relevant, not the fact that there was some internal dissent. But the PARAC... You keep hopping from one step to another. Even if you were right about PARAC, the doctor's testimony says he can do everything. He can do the high-speed pursuit. So you lose for summary judgment even if high-speed pursuit is an essential job function. Unless the jury can't listen to that doctor for some reason. Well, he didn't say high-speed pursuit wasn't an essential function. No, no, no. He said the guy could do it. And if you can do the essential function, the employer can't just say, hey, I don't think 100 people should be around here. We understand that employers are bound by the PARAC determination. Well, but that's the estoppel argument, which you've already agreed with me wasn't raised below and therefore can't be raised on this appeal. Well, that's not called estoppel, but this is a situation where the employer's being accused of discrimination. Of discriminating against somebody who, because they chose not to let him because it wasn't essential or he couldn't do it. And the employer, there's no evidence the employer ever did that. Did what? Discriminate. Yes, there is. There is evidence that they terminated him because he had monocular vision, claiming that monocular vision precludes him from doing high-speed chases, which is an essential job function. That's why they terminated him, right? No, the PARAC terminated him. The employer placed the issue to PARAC. Well, that's why they, well, actually, after PARAC came back, didn't the city itself terminate him? They had to. But who terminated him? Of course the city. Okay. And they terminated him because they put him through this involuntary proceeding. They put him through, rather than terminating him, I know factually from the drugs, they chose to go to PARAC. We will give you an examination. They find out that he cannot see out of one eye. Suppose they said they got another employee. He's HIV positive. Whoa, we don't want anyone on our police force who's HIV. You're disabled. You can't do the essential job functions. The person says, what do you mean? I've been doing it for 20 years. They say, we're going to get rid of you anyhow. We're going to go to PARAC. And as long as we get PARAC to agree that we shouldn't have anyone with HIV positive on our police force, then we're insulated because our lawyer will then argue, well, PARAC made the determination. We didn't. We had to fire him. It can't work that way. I disagree with you. PARAC's an independent body. It's not a rubber stamp. It's not the appointing authority. If PARAC decides that an individual, either through a voluntary retirement request, it is then up to them to decide whether that individual is disabled or not. Suppose PARAC says no African Americans on the police force. Would they have a race discrimination claim against Citi when they fired him? I think against PARAC. But you see, the ADA says don't discriminate on the basis of disability with respect to the terms and conditions of employment. And one of the conditions of employment here is that you've got monocular vision. We're going to put you into this involuntary retirement program and send you to PARAC. That's the Citi's choice. This man didn't decide that he wanted to take disability retirement. The Citi made the choice to send him into involuntary retirement because he had one eye and they felt that he couldn't do the essential functions of the job. That's disability discrimination if there's a fact issue as to whether he can do the essential functions of the job. The Citi gave him a fitness for duty exam by a doctor. The physicians determined he could not do it. No, one of them said he could. No, the original Citi physician, the two-step process. The Citi examined him. The physician said he can't. So then the Citi went to PARAC. This is not a Citi plucking an officer. Remember, we're not the jury. No one is suggesting by any of these questions that any of us have concluded that the Citi discriminated against. The Citi's got lots of defenses. The only question is, does it go to a jury or not? Are there some fact issues that need to be worked out to decide whether the Citi is liable or not? The jury might very well conclude everything you say is absolutely right, but when he's got a doctor saying he can do that function and when the Citi's own job descriptions don't even list the function, the jury might think it's not essential or if it's essential, we agree with that. Why isn't that a rational way to think about it? And I think you keep coming back to PARAC eventually, but PARAC certainly can't serve as some laundry that cleans out any employment discrimination that any employer may wish to make. I think they made a decision on their own to go to PARAC when perhaps that itself was discriminatory. They made a decision to get their independent body. I disagree with you there that PARAC, because PARAC is 2-1, that that raises a question of fact. That body has determined he's disabled, permanently disabled for being a police officer because of vision, and he cannot do the essential functions of his job. Well, go back to my question. Suppose they decided that African-Americans can't do the essential function of the job. Then you challenge PARAC. You couldn't, and then the Citi fired them. They fired all African-Americans. You're saying none of them could sue the Citi? I suppose. I'm not saying that. Of course, they could try if the Citi did that. Well, could they successfully sue the Citi? I don't think so. Okay, so you're taking... As long as they can get PARAC to sign off on a disability, it doesn't make any difference. It could be race, religion, handicap, whatever. I think that's what you're saying. No, I'm not going to accept that. If PARAC does something, it's blatantly discriminatory. Well, blatant isn't the test. The test is, is there a factual basis for a jury to think there was discrimination? If PARAC says, if PARAC says we're going to get rid of all the Jews, no Jews could be police officers on Somerville, that is obviously discriminatory, not rational, not nothing. So any city, any municipality that says we're going along with that, I agree we're liable. In this situation, you have a real, live public safety issue. That is, can an officer with monocular vision perform the essential functions of the job of a police officer? And that is, a medical panel agreed unanimously that he could not. Well, no, no, that's how you opened up. And then you admitted that one of the doctors said he couldn't do the high-speed chase. It's not a question of admitting. I know what it says. But three of them said he couldn't do the job. But that's not, because one of them said for another reason, that he wasn't fired for. But he still couldn't do it. So we're going to have a trial to do what? To show that Perak was wrong. That the agency, which in fact was the moving force in ending his job, if Perak had said he couldn't, he'd be working. It's not the city's determination. Thank you.